IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–00741–WJM–KMT

JEFFERSON COUNTY SCHOOL DISTRICT R-1,

    Plaintiff,

v.

ELIZABETH E., by and through her parents, Roxanne B. And David E.,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This matter is before the court on "Defendant's Motion for Award of Attorney Fees" (Doc. No. 43 [Mot.], filed August 17, 2011). Plaintiff filed its response on September 12, 2011 (Doc. No. 29 [Resp.]), and Defendant filed her reply on September 26, 2011 (Doc. No. 46 [Reply]). The motion is ripe for recommendation.[1]

### FACTUAL BACKGROUND

Following is a verbatim recitation of the factual background of this case as stated by District Judge William J. Martínez in his Order issued on June 29, 2011.

> Elizabeth was born in 1991, and was substantially neglected by her birth parents. (IHO Decision, at 2.) Roxanne B. and David E. ("Parents") became her foster parents when she was 16 months old, and they adopted her when she was

---

[1] Pursuant to Fed. R. Civ. P. 54(d)(2)(D) and 72(b)(1), a magistrate judge must treat a referred motion for attorney's fees as if it were a dispositive pretrial matter and enter a recommended disposition.

three-and-a-half years old. (*Id.*) In March 2000, she and her Parents moved to Colorado, and she began attending schools within the District. (Id.) The District identified her as a student with disabilities eligible for special education and related services under the IDEA, and created an IEP for her. (*Id.*) As early as December 2000, Elizabeth was diagnosed with Oppositional Defiant Disorder, Posttraumatic Stress Disorder, Reactive Attachment Disorder, and Bipolar I Disorder. (Jt. Ex. LL, at 64; *see also id.* at 28, 35, 63.)

During Elizabeth's eighth grade year (the 2005-06 school year), a dispute arose between her Parents and the District regarding whether the District was providing Elizabeth with a FAPE.[2] (IHO Decision, at 2-3.) They reached a mediated settlement whereby the District would pay half of her tuition to attend a private school in Colorado, Humanex Academy, for the ninth grade (2006-07). (*Id.* at 3; Jt. Ex. A at 13-17.) They reached another such agreement for Elizabeth to attend Humanex for the tenth grade (2007-08). (IHO Decision, at 4; Jt. Ex. A at 7-12.) During both of these school years at Humanex, Elizabeth started the school years well, but by the spring she would decline academically, have anger outbursts, go through alternative periods of reality, and have problems staying in the classroom. (IHO Decision, at 3-4.) By the end of the 2007-08 school year, she had not earned enough credits to advance to the eleventh grade. (*Id.*)

On August 11, 2008, the Parents and the District entered into another settlement agreement whereby the District agreed to pay tuition at Humanex during the 2008-09 school year subject to certain conditions, including that an IEP team meeting would be convened by August 29, 2008 and the team would conduct an evaluation of Elizabeth. (*Id.* at 5-6; Jt. Ex. A, at 1-6.) A day or two before this, the Parents had already begun looking into a potential temporary psychiatric hospitalization for Elizabeth to better evaluate and diagnose her condition. (ECF No. 19, at 9 ¶ 32; ECF No. 23, at 8 ¶ 32; Due Process Hearing Transcript ("Transcript"), at 850:9-25, 872:10-24.) This was prompted by Elizabeth's deteriorating behavior. At home, she engaged in outbursts of screaming and rage, including hitting family members; stopped engaging in activities she enjoyed; and would stay in her room. (IHO Decision, at 5-6.) At the beginning of the new school year (which began August 12), she was absent two of the first six days, and overall was not productive. (IHO Decision, at 4; ECF No. 19, at 9 ¶ 34; ECF No. 23, at 9 ¶ 34.) On August 15, 2008, the Parents met with members of the District, at which time the Parents informed the District that they were considering a temporary psychiatric hospitalization of Elizabeth. (*Id.* at 6.)

---

[2]A free appropriate public education.

2

At this meeting, the Parents signed the necessary forms for the District to conduct an IEP evaluation of Elizabeth. (*Id.* at 7.)

On August 20, 2008, the Parents placed Elizabeth at the Aspen Institute for Behavior Assessment ("Aspen") in Utah. (*Id.*) On August 26, 2008, the Parents first provided the District written notice of the hospitalization, informing it that

> Elizabeth was admitted last Wednesday, August 20 into Aspen Institute. This is a lock down facility that works exclusively on assessment and then where is the next best place for her to go: home, day treatment, residential, etc. Elizabeth will be there for about 6 to 8 weeks depending on how long it takes to figure out [this] puzzle.

(Jt. Ex. C, at 22.)

The next communication between the Parents and the District appears to have been one month later, on September 24, 2008, when the District informed the Parents that it "[is] withdrawing Elizabeth from Humanex. [It is] not willing to incur the cost of having her enrolled even with the option of receiving a tuition refund for the months she won't attend." (*Id.* at 19.) This e-mail mentioned the possibility of re-enrolling Elizabeth at Humanex following her hospitalization. (*Id.*) Two days later, the Parents' attorney (who is representing them in this action) informed the District that the Parents viewed this disenrollment as a breach of the settlement agreement. (*Id.* at 14-15.) On October 3, 2008, the Parents provided the District with an update on Elizabeth's progress, saying that she would be at Aspen another 2 to 4 weeks. (*Id.* at 17-18.)

On October 7, 2008, the District responded through its counsel (who is representing it in this action), stating, "[I]t appears that at this point, the settlement agreement is moot, as parents have unilaterally placed Elizabeth at the Aspen Center in Utah. As such, Elizabeth is not a District student, and the District has no on-going responsibility to Elizabeth under the IDEA." (*Id.* at 14.)

On November 10, 2008, the Parents' attorney notified the District that, following her placement at Aspen, the Parents would be enrolling Elizabeth at Innercept, LLC in Idaho, a residential treatment center, and that the Parents would seek reimbursement from the District for this placement. (*Id.* at 6.) The Parents also provided the District with Aspen's final report on Elizabeth. (*Id.* at 5.) On November 20, 2008, the District responded, through counsel, informing the

>        Parents that the District would not reimburse the placement at Innercept, "but stands ready, willing, and able to provide Elizabeth with a [FAPE] if she returns to the . . . District." (*Id.* at 4.)
>
>        On December 3, 2011, Elizabeth's mother e-mailed the District, stating, "[W]e think that a more productive and cost-efficient way to move forward, rather than drawing lines in the sand, is to start anew and all work together to complete Elizabeth's IEP.  How would you like to proceed with this process?" (*Id.* at 3.) The District responded on December 9, 2008, "[T]he District does not presently have an obligation to evaluate, convene IEP team meetings for, or otherwise serve Elizabeth under the IDEA.  However, . . . the District stands ready, willing, and able to evaluate and provide Elizabeth with a [FAPE] upon her return to the District." (*Id.*)  After hearing back from Elizabeth's mother the same day, the District repeated its position on December 11, 2008 that it would be willing to provide an IEP and otherwise serve Elizabeth's educational needs only if she returned to the District. (*Id.* at 1.)

(Judge Martinez's Order at 3–7 [footnotes from original text omitted; footnotes added herein].)

## PROCEDURAL BACKGROUND

Elizabeth's Parents initiated the administrative process under 20 U.S.C. § 1415(f), requesting a due process hearing and seeking reimbursement from the District for Elizabeth's placement at Innercept. (IHO Decision, at 1; Doc. No. 19, at 2.)  The IHO conducted the due process hearing over five days in August 2009.  (*Id.*)  On September 15, 2009, the IHO issued his decision, holding that: (1) the District did not timely make a FAPE available to Elizabeth prior to her enrollment at Innercept, (2) Innercept is an appropriate placement under the IDEA, (3) the Parents were entitled to reimbursement, and (4) reimbursement should not be reduced or denied based on (a) the Parents' alleged failure to provide notice to the District prior to placing Elizabeth at Aspen; (b) the Parents' alleged failure to make Elizabeth available to the District for an IEP evaluation; or (c) the Parents' alleged unreasonableness.  (*See* IHO Decision.)

The District appealed the IHO decision (under 20 U.S.C. § 1415(g)) to the ALJ. (*See* Decision Upon State Level Review (Corrected) ("ALJ Decision") at 1; Doc. No. 19, at 2.) On February 2, 2010, Administrative Law Judge Robert N. Spencer issued his decision generally affirming the IHO decision. (See ALJ Decision at 21.)

On March 31, 2010, the District filed this action (under 20 U.S.C. § 1415(i)(2)) appealing the ALJ decision. (Doc. No. 1.) Judge Martínez performed a modified *de novo* review of the record and affirmed the ALJ's decision on all issues.

The District has appealed the District Court's decision to the Tenth Circuit Court of Appeals. Elizabeth and her parents now seek an award of attorney fees pursuant to 20 U.S.C. § 1415(i)(3)(B).

**STANDARD**

The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). To determine whether a party prevails for purposes of attorney's fees under the IDEA, the Tenth Circuit has adopted the rule that the Supreme Court of the United States crafted for assessing prevailing-party status under 42 U.S.C. § 1988. The Supreme Court held in *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782 (1989), that, "if the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." *Tex. State Teachers*, 489 U.S. at 791-92 (citation omitted). The Supreme Court

also has held that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)("Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement . . . . Otherwise the judgment or settlement cannot be said to 'affec[t] the behavior of the defendant toward the plaintiff.' ") (citations omitted)(brackets in original).  "A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation." *Tex. State Teachers*, 489 U.S. at 791.

## ANALYSIS

Defendant argues that the ALJ's holding that the District had failed to provide Elizabeth with a FAPE and that the Parents' placement of Elizabeth at Innercept is a final decision on the merits that has significantly altered the legal relationship between the parties, such that the defendant is entitled to attorney fees.  Plaintiff argues the ALJ's decision is not a final decision on the merits, and thus Defendant is not entitled to attorney fees at this time.  Plaintiff also argues Defendant will not be prejudiced in postponing an award of attorney fees until after the Tenth Circuit rules on the pending appeal.

### *1.  Prevailing Party*

Under the governing case law, the court must determine whether Defendant is the prevailing partyin this action.  In this case, the primary relief sought by the defendant was reimbursement from the District for Elizabeth's placement at Innercept. (IHO Decision, at 1; Doc. No. 19, at 2.)  The IHO issued its decision requiring, *inter alia*, Plaintiff to reimburse the

defendant for the cost of Elizabeth's placement at Innercept. (*See* IHO Decision.) The ALJ generally affirmed the IHO decision.[3] (*See* ALJ Decision at 21.) Thus, because the defendant succeeded on the most significant issue and achieved some of the benefit she sought in bringing suit, she has crossed the threshold to a fee award of some kind. *Tex. State Teachers*, 489 U.S. at 791-92. There is no dispute that Plaintiff, as of January 19, 2010, has been required to fund Elizabeth's placement at Innercept. (*See* Mot. at 8.) There also is no dispute that, absent the ALJ's ruling, Plaintiff would not have agreed to reimburse the parents for Elizabeth's placement at Innercept. The Supreme Court stated that a " judgment for damages in any amount, whether compensatory or nominal, modifies the [plaintiff's] behavior for the [defendant's] benefit by forcing the defendant to pay an amount of money [it] otherwise would not pay." *Farrar*, 506 U.S. at 113. Therefore, the ALJ's ruling materially altered the legal relationship between the parties by modifying the plaintiff's behavior in a way that directly benefits the defendant. *Farrar*, 506 U.S. at 111–12.

Plaintiff argues that the ALJ and District Court decisions requiring it to fund Elizabeth's placement at Innercept are "stay put" orders requiring the plaintiff to maintain the status quo during the pendency of this litigation. (*See* Resp. at 3–7.) The IDEA's stay-put provision, 20 U.S.C. § 1415(j), provides, in pertinent part:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the

---

[3] The only legal conclusion the ALJ overturned was the IHO's conclusion that the defendant was entitled to reimbursement for travel costs to and from Innercept for family therapy. (ALJ Decision at 19.)

7

> child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j). The statutory stay-put provision thus seeks to maintain the status quo during the administrative and judicial proceedings the IDEA provides. "The purpose of the stay-put provision is to prevent school districts from 'effecting unilateral change in a child's educational program' "during the pendency of IDEA proceedings. *Erickson v. Albuquerque Pub. Schs.*, 199 F.3d 1116, 1121 (10th Cir. 1999)(quoting *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 83 (3d Cir. 1996)).

The IDEA's stay-put provision becomes applicable only when a change in a child's placement is proposed. *See Moss v. Smith*, 794 F. Supp. 11, 14 (D.D.C.1992). *See DeLeon v. Susquehanna Cmty. Sch. Dist.*, 747 F.2d 149, 152 (3d Cir. 1984)(stating that the threshold question is whether there was a change in "educational placement"). Once a change in educational placement has been proposed, the IDEA's stay-put provision operates as a substitute for traditional preliminary injunction analysis. In *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508 (7th Cir. 2005), the United States Court of Appeals for the Seventh Circuit stated: "The stay-put provision has been interpreted as imposing an automatic statutory injunction, *Honig v. Doe*, 484 U.S. 305, 326-27 (1988) . . . , like the automatic stay in bankruptcy." *Id.* at 511.

"The law is clear that an administrative decision in favor of the parents is equivalent to an agreement between the state agency and the parents and, therefore, represents the child's current

education placement for purposes of the IDEA's 'stay-put' provision." *Bd. of Educ. of Albuquerque Pub. Schs. v. Miller*, No. CIV.05–487 MCA/LFG, 2005 WL 6168485, at *4 (D.N.M. July 22, 2005) (citing 34 C.F.R. § 300.514(c)); *Sch. Comm. of Town of Burlington v. Mass. Dep't of Educ.*, 471 U.S. 359, 373 (1985); *Bd. of Educ. v. Schutz*, 290 F.3d 476, 482–84 (2d Cir. 2002); *Ga. State Dep't of Educ. v. Derrick C.*, 314 F.3d 545, 552 (11th Cir. 2002); *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d at 83–84; *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings*, 903 F.2d 635, 641 (9th Cir. 1990); *Bd. of Educ. of Pine Plains Cent. Sch. Dist. v. Engwiller*, 170 F. Supp. 2d 410, 413–14 (S.D.N.Y. 2002)).

The court agrees with the defendant that in this case, there was no stay-put placement available because Plaintiff had already unilaterally withdrawn Elizabeth from her previous placement at Humanex. Moreover, Plaintiff had informed the defendant that it did not have any continuing obligation to Elizabeth unless she returned to the District. Thus, because the plaintiff did not place Elizabeth at Innercept and refused to pay for her placement there until the ALJ ordered the plaintiff to reimburse the defendant, and because the plaintiff unilaterally withdrew Elizabeth from the District, the now-ongoing funding of Elizabeth's placement at Innercept cannot be considered maintenance of the status quo. Indeed, the status quo prior to the ALJ's decision was that the parents were paying for Elizabeth's placement at Innercept, and Plaintiff was claiming it had no continuing obligation to Elizabeth. Finally, there has been no newly-proposed change in Elizabeth's placement, nor does Plaintiff have ability to suggest or effect such a change, such that the stay-put provision is applicable. *See Erickson*, 199 F.3d at 1121; *Moss*, 794 F. Supp. at 14.

Plaintiff cites a number of cases which it claims are adverse authority to the defendant's position. However, Plaintiff has not cited a single case in which parents who obtained a decision on the merits changing the child's placement were denied attorney fees. Rather, the parents in each of the cases cited by the plaintiff were successful only in preserving the status quo. One of the cases cited by the plaintiff explicitly acknowledges this critical distinction. "[P]arents who achieve favorable interim relief may be entitled to prevailing party attorney's fees *as long as the interim relief granted derived from some determination on the merits . . . .*" *J. O. v. Orange Township Bd. of Educ.*, 287 F.3d 268, 274 (3rd Cir. 2002) (emphasis added). In another case, the court held that an emergency order to preserve the status quo without a decision on the merits did not warrant prevailing party status. *Board of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377, 382 (7th Cir. 2000). Similarly, in *Christopher P.*, the court found that a temporary restraining order granted to preserve the status quo until a decision on the merits could be made did not make the parents the prevailing party. *Christopher P. v. Marcus*, 915 F.2d 794, 805 (2d Cir. 1990). None of these cases addresses the situation present here, where a decision on the merits–and not just a temporary restraining order–changed the child's placement and made the District responsible for payment.

Plaintiff also argues that the requirement that a school district maintain a child's current placement involves only placement and not funding. However, this argument is not supported by the case cited by the Plaintiff. In *Pardini v. Allegheny Intermediate Unit*, 420 F.3d 181, 190–201 (3d Cir. 2005), the school district argued that the student's transition from Part C to Part B of the IDEA cut off the child's right to have her originally agreed upon placement funded

10

by the school district. The court decided against the school district, holding that the shift from one funding agency to another did not eliminate the child's rights under 20 U.S.C. § 1415(j). Nothing in either the facts or language of the case supports the plaintiff's claim that a court imposed duty to pay for a child's placement is not a material alteration in the legal relationship of the parties. Moreover, though *Pardini* court only decided the issue of "stay-put" placement and did not reach a final decision, the court remanded the case for a determination of the amount of reimbursement *and attorney fees* due to the parents. *Id.* at 192.

Thus, in light of the foregoing, the court agrees with the defendant that the decision of the ALJ, and the subsequent decision by the District Court, materially altered the legal relationship of the parties and required the plaintiff to do something it had previously refused to to do, and that Defendant, as the prevailing party in this action, is entitled to attorney fees.

### 2.     *Prejudice*

Plaintiff also argues that there is no prejudice to the defendant in postponing a decision on attorney fees until after the Tenth Circuit rules on the appeal. (Resp. at 7.) The defendant argues that making the parents wait for possibly years for reimbursement will be extremely prejudicial to the family's economic well-being, will cause significant hardship to the family, will encourage the plaintiff to further wear the family down financially, and will have the ultimate effect of discouraging the very actions that Congress sought to encourage through the fee-shifting provision. (Reply at 8.)

The Supreme Court has recognized that delaying a fee award until the conclusion of litigation causes "substantial hardship" to litigants and discourages the institution of the very

actions that Congress sought to encourage through the fee shifting statute. *Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 723 (1974). The defendant has spent an exorbitant amount of money on attorney fees in this matter. The court finds Plaintiff's argument that the defendant would not be prejudiced if the court postpones a decision on attorney fees to be incredible.

Plaintiff also suggests that the Tenth Circuit may reverse the ALJ and District Court's decision altogether or modify the amount of reimbursement ordered to the defendant to bring the final award within the parameters of an offer of judgment, thereby terminating the defendant's right to fees from the date of the offer forward. However, the defendant counters that the Innercept fees that the District has already paid in this matter significantly exceed the statutory offer already made by the District. Thus, there is no possible outcome that will make the provisions of Fed. R. Civ. P. 68 relevant. Taking this undisputed argument as true, the court agrees with the defendant.

### 3.   *Reasonableness of Fees*

After determining that a party is the prevailing party for purposes of attorney's fees, a court must determine the amount of reasonable attorney's fees that it should award. *See Sanchez v. Matta*, No. CIV 03-0297 JB/LFG, 2005 WL 2313621, at *3 (D.N.M. July 29, 2005)(citing *Phelps v. Hamilton*, 120 F.3d 1126, 1129 (10th Cir.1997)). To determine the reasonableness of attorney's fees, the Tenth Circuit has adopted a framework which "requires the district court to determine the 'relevant indicia of success' by examining: (1) the difference between the judgment recovered and the judgment sought; (2) 'the significance of the legal issue on which

the plaintiff prevailed'; and (3) 'the public purpose served by the litigation." *Brandau v. Kansas*, 168 F.3d 1179, 1181 (10th Cir. 1999)(quoting Farrar, 506 U.S. at 121-22).

In this case, however, the court need not perform the analysis set forth in *Brandau*, as Plaintiff has not made any argument that the attorney fees sought by the defendant are not reasonable. Moreover, Plaintiff states that if, on appeal, the Tenth Circuit affirms, it "hereby *stipulates* that the amount of fees sought by Parents is reasonable." (Resp. at 7 [emphasis added.])

WHEREFORE, for the foregoing reasons, this court respectfully

RECOMMENDS that "Defendant's Motion for Award of Attorney Fees" (Doc. No. 43) be GRANTED and that the defendant be awarded attorney fees in the amount of $141,731.00.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 6th day of March, 2012.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge